## Martin v. Commonwealth.

(Decided December 15, 1922.)

### Appeal from Clay Circuit Court.

1. Criminal Law—Compelling Defendant to Testify as to Previous Trial.—On the trial of the appellant under indictment for murder, which resulted in his conviction of voluntary manslaughter, it was reversible error for the trial court to compel him on cross-examination to testify regarding his previous trial and conviction of a misdemeanor, having no connection with the homicide for which he was being tried and throwing no light on the motive with which it was committed.

2. Criminal Law—Self-Defense—Instruction.—In this case an instruction on the law of self-defense should not have been qualified as was done by the addition thereto of language telling the jury that the appellant could not avail himself of such defense, if the killing occurred in a mutual combat, or in a rencounter brought on by his first attacking the deceased, as there was no evidence in behalf of the Commonwealth conducing to prove that the killing occurred in a mutual combat or in a rencounter brought on by appellant first attacking the deceased. As on the facts of the case the instruction as thus qualified was highly prejudicial to the sub-

stantial rights of the appellant, the error necessitates the reversal of the judgment.

T. H. WEBB, LEWIS & LEWIS and C. B. LYTTLE for appellant.

CHAS. I. DAWSON, Attorney General, THOS. B. McGREGOR, Assistant Attorney General, C. R. LUKER and J. C. CLOYD for appellee.

OPINION OF THE COURT BY JUDGE SETTLE—Reversing.

The grand jury of the Clay circuit court on September 22, 1920, returned an indictment accusing Stephen Martin of the crime of willful murder committed by killing Woodson Benge on September 21, 1920. Immediately after the homicide Martin fled the jurisdiction of the court. Some months later he returned and surrendered himself to the custody of the jailer. His bond was fixed at $5,000.00, whereupon he executed same and was released. The case being set for trial was passed from day to day and finally at the September term was continued to the 9th day of the next regular term of that court. On the calling of the case for trial at the next term of court the Commonwealth announced ready but the defendant announced not ready and asked a continuance of the case to the next term of court, and in support thereof appellant filed his affidavit showing the absence of several witnesses material to his defense and also setting forth facts showing that at that time, as well as for some weeks previous thereto, there existed in Clay county such a state of lawlessness and violence that it was difficult for appellant to see or consult with his witnesses or to prepare his case in anywise. In his affidavit he set forth that in the district where he lived, which includes Little Goose creek, Portersburg and Dripping Springs, certain acts of lawlessness and violence started with the burning of a stock barn of one Joel Ponder, and the burning of certain live stock and other property at the same time which was followed by the shooting at and into defendant's dwelling house, and also of shooting at persons from ambush and other acts of violence and terrorism, and the banding and confederating together of different persons and factions, and that notwithstanding the fact appellant had absolutely nothing to do with any of these things, it was circulated and had been circulated throughout Clay and adjoining counties and throughout the state, through the medium of the public press, that

all these acts of violence grew out of the killing of which this appellant is now convicted, when as a matter of fact none of these things grew out of or had any connection with the charge in the indictment against him. The affidavit is long and sets forth in detail many facts more or less relevant in support of the motion for a continuance. This motion was overruled by the court, and most of the witnesses mentioned in the affidavit were arrested and brought into court and testified in behalf of appellant while the affidavit as to the others was read as the deposition of such persons. We therefore conclude that the failure of the trial court to grant appellant a continuance, a matter within its sound discretion, was not such prejudicial error as to warrant a reversal of the judgment of this case. As the case must be reversed for other reasons, we assume that no such question will arise upon another trial.

The trial being had appellant was found guilty of voluntary manslaughter and his punishment fixed at twenty-one years' confinement in the state penitentiary. From this judgment he appeals.

In addition to the alleged error of the court in failing to grant him a continuance upon his motion and affidavit above mentioned, appellant complains upon this appeal that the trial court erred to his prejudice in the admission and rejection of evidence; that the verdict of the jury is palpably and flagrantly against the evidence, and that the court erred in instructing the jury.

With respect to the admission of incompetent evidence appellant in his brief says: "The court erred in permitting the attorney for the Commonwealth to introduce and prove that the defendant had been heretofore indicted, tried and convicted for shooting on the public highway. This evidence was introduced over defendant's objection. The court also erred to the prejudice of defendant "in refusing to permit the defendant, when testifying, to explain to the jury fully why he left his home and went to the state of Oklahoma immediately after the killing." It appears from the record that appellant Martin and his victim, Benge, were brothers-in-law and lived in the same neighborhood in Clay county. For some time previous to the homicide they had not been upon friendly terms and along in May had a difficulty in which they threatened to do violence to each other. At that time there was some shooting, not at each other but as a matter of intimidation. For

some time after the dispute in May appellant and deceased were not on speaking terms but later they began to speak when they met upon the highway. On the morning of the day of the homicide appellant Martin and his brother Sam Martin and one Bledsoe left their homes to go to a farm not far distant to get some cattle to take to their home.    In doing so they passed the home of deceased, Benge.    Some time in the afternoon appellant and Bledsoe rode up the creek, passing the home of deceased, and when they were some two or three hundred yards distance up a hill above the house in the road, two shots were fired and immediately the deceased, who was near his home, went up the road in the direction of the shooting and fired off his pistol two or three times.    He had seen appellant pass. Later, with this pistol, a forty-five, buckled around him, deceased did some chores about the house and then had supper with his family, composed of his wife, two or three daughters and a son. About dark that evening while the family were sitting in the kitchen at the Benge home one of the daughters saw appellant riding his horse along the public road in front of their home.  She immediately said to her father: "There he goes now," whereupon deceased, with his pistol buckled around him on the outside, arose and went out into the yard in the direction of where appellant was passing.    Up to this point there is little controversy about the facts, but the story told by appellant differs very widely from that told by the members of deceased's family as to what took place after deceased went into the yard.    The Benge family all testifying say in substance that when the deceased was informed appellant was riding past his house he immediately arose and went into the yard, following a path towards the point where appellant was riding; that appellant called out to deceased and said: "If you are as game as you used to be, come out," and deceased continued to walk in the direction of appellant; later on he got behind a small tree and crouched down behind it with his pistol in his hand; about this time or a little before, according to the evidence of the members of deceased's family, appellant fired two shots at deceased without wounding him, then deceased fired two shots at appellant on his horse without wounding him.    Thereupon appellant jumped from his horse on the side away from his adversary, and going under the neck of his horse stuck his pistol through the crack of the paling fence and shot deceased.

According to the evidence for the Commonwealth given by the members of the Benge family, the difficulty was precipitated and brought on by appellant; while the evidence of appellant is to the effect that he had no intention of injuring deceased until deceased began to fire at him, and that he then fired back in an effort to save his own life.

On cross-examination of appellant and in an effort to impeach and discredit him, he was asked by attorney representing the Commonwealth: "Q. I will ask you if it is true that you were indicted on the 22nd of September, 1920, for shooting on the public highway at this particular point (meaning on the hill above the Benge home); and that if later, on the — day of September, if you did not plead guilty to this charge of shooting on the public highway at this particular time?" To which appellant answered, "No, sir." "Q. Did you plead guilty to that shooting there in May (meaning the shots fired on the public highway during or about the time of the difficulty with Benge which happened in May)?" To which appellant answered, "Yes, sir." "Q. I will ask you if that indictment, the one I have just spoken of, the one about which you spoke, is not the one near Wood Benge's house when he was killed that night, and the same witnesses were not in that case?" To which appellant answered, "No, sir; I didn't shoot there at all and if I pleaded guilty to that I was ignorant of what I plead guilty to." "Q. I will ask you if on the 7th day of the September term, 1920, you were not tried by a jury for this same charge and they testified about the same shooting?" A. "No. sir, I was not there. Q. And if you were not found guilty of that charge and later that verdict was set aside, and again you came into the court and pleaded guilty to the same charge and paid the fine? A. If I did I don't remember it."

Appellant by counsel objected to all these questions and to the answers given thereto but his objections were overruled. One of the indictments referred to in the question was for shooting upon the public highway at the time Bledsoe and appellant rode up the hill after they had passed Benge's house. One of the Benge children testified that he saw appellant take the pistol out and fire it, but on cross-examination showed he did not know such fact. Appellant testified that Bledsoe fired the shot at a time when appellant did not know or expect

that he was about to do so and had no opportunity to prevent it. On this same subject Bledsoe testified that he had the pistol of appellant most all day and that while riding up the road above the Benge home, "I shot two shots up at the school house above Wood's house" (meaning Wood Benge's house). It therefore appears from the evidence that the shooting on the public highway above the Benge home for which appellant was indicted was a matter of legitimate inquiry, and the attorney for the Commonwealth had a right to find out who fired these shots and to show that appellant pleaded guilty to the charge, if that were true; but when the attorney for the Commonwealth in order to impeach appellant and to discredit him as a witness, asked him about another charge of shooting upon the public highway which occurred in May previously for which he had been indicted, and required him to answer and admit the fact that he had been so indicted upon such charge, reversible error was committed, for the record shows counsel for appellant objected to the question and the answer, and that the court overruled said objection and the appellant saved an exception.

We have several times written that offenses, misdemeanors, of which appellant may have been guilty, are not competent as evidence upon the trial of another and distinct offense, and if such evidence be allowed over the objection of the defendant it is reversible error. Sullivan v. Commonwealth, 158 Ky. 539; Welch v. Commonwealth, 110 Ky. 105; Powers v. Commonwealth, 110 Ky. 386. We do not regard as serious error the failure of the trial court to permit appellant, when testifying in his own behalf, to more fully explain to the jury why he left his home and went to the state of Oklahoma immediately after the killing, in as much as the court did allow him to state that he left because he felt himself in danger and feared that the family of deceased might do him harm.

Appellant next complains of instruction No. 4, given by the court to the jury. The first instruction given by the court was one upon murder and manslaughter; the second told the jury the limit of punishment which might be inflicted in case it found appellant guilty of murder, and in case it found him guilty of manslaughter. The third instruction was one upon self-defense and is in the usual form. The fourth instruction of which com-

plaint is made qualifies and limits the self-defense instruction. It reads:

"But, if the jury believe from the evidence beyond a reasonable doubt, that when the defendant did not believe and did not have reasonable grounds to believe, that he was in real or apparent danger of death, or other great bodily harm at the hands of said Woodson Benge, he wilfully and feloniously first began and brought on the difficulty by shooting at said Woodson Benge with a pistol with the intention of killing the said Benge and thereby made the danger to himself on the part of the said Woodson Benge excusable or justifiable in his necessary or reasonably apparent necessary self-defense, or that the defendant and the said Woodson Benge voluntarily entered into the actual combat with the intention upon the part of each to kill the other, or do the other some great bodily harm, then you cannot acquit the defendant on the ground of self-defense or apparent necessity."

Under the facts in this case this instruction should not have been given, especially that part reading: "If the jury believe from the evidence beyond a reasonable doubt that the defendant and the said Woodson Benge voluntarily entered into the actual combat with the intention upon the part of each to kill the other, or to do the other some great bodily harm, then you cannot acquit the defendant on the ground of self-defense or apparent necessity." After a close analysis of the testimony we are unable to find any reason for the giving of this objectionable instruction for the appellant's theory of the case and the evidence in support thereof tend strongly to show that the deceased was the aggressor and that appellant only fired in self-defense; while on the other hand all the evidence for the Commonwealth was directed to proving that appellant sought the opportunity to and did in fact bring on the difficulty. Therefore there could have been no voluntary entry into combat by either of the parties. Upon another trial the court will give instructions Nos. 1, 2, 3, 5 and 6, but will omit instruction No. 4, for it prejudicially affects the right of appellant.

While appellant earnestly insists that the verdict is palpably and flagrantly against the evidence, we are unable to give our assent to his insistence. We believe there was abundance of evidence to have supported a verdict of guilty and likewise the jury might well under the evi-

dence have found the defendant not guilty, according to its judgment of the veracity of the parties testifying.

For the reasons indicated the judgment must be reversed for new trial consistent with this opinion.

Judgment reversed.