## Martin v. Commonwealth.

(Decided March 10, 1925.)

### Appeal from Clay Circuit Court.

1. Criminal Law—Uncertified Transcript of Former Trial Incompetent, and Court Properly Refused to Permit Witness to Read Therefrom.—In view of Ky. Stats., section 4640, 4643, 4645, an uncertified and unsigned copy of transcript of former trial is not competent for any purpose, unless proved to be correct by oath of some witness and court did not err in refusing to permit clerk to read from such copy.

2. Witnesses—Where Statements of Two Witnesses Are Sought to be Contradicted, They Must be Separately Contradicted.—Where two state's witnesses were each asked a different question as to what they said on a certain occasion, proof was competent as to what they separately told another, different from their testimony on trial, but where witness, introduced to contradict their testimony, was asked whether such witnesses had made statements

which they denied, not specifying which one, objection thereto was properly sustained.

3. Criminal Law—Evidence Inadmissible to Contradict One Not Testifying on Trial.—Though a witness may be contradicted by proof that he has stated out of court a material thing different from his testimony in court, no proof was competent as to anything that one who was not sworn as a witness said, or failed to say, to another outside of court.

4. Criminal Law—Conviction Not Reversed Unless Apparent from Whole Case that Defendant's Sustantial Rights Prejudiced.— Under the statute, a judgment of conviction may not be reversed, unless it appears from whole case that defendant's substantial rights have been prejudiced.

5. Homicide—Evidence Held to Sustain Conviction of Voluntary Manslaughter.—Evidence that deceased and defendant were ready for the fray, and were on bad terms; that defendant had been drinking heavily, and both had their pistols out and made no effort to avoid a difficulty, held to sustain a conviction of voluntary manslaughter.

LEWIS & LEWIS, T. H. WEBB and C. B. LYTTLE for appellant.

FRANK E. DAUGHERTY, Attorney General, and GARDNER K. BYERS, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY COMMISSIONER HOBSON— Affirming.

Appellant was indicted for the willful murder of Wood Benge. On the first trial of the case he was found guilty of voluntary manslaughter and his punishment fixed at confinement in the penitentiary for twenty-one years. He appealed to this court; the judgment was reversed for error in the instructions. Martin v. Commonwealth of Ky., 197 Ky. 43. The facts of the case are stated in that opinion. On the return of the case to the circuit court he was tried again under instructions which are unobjectionable. He was again found guilty of voluntary manslaughter and his punishment was fixed at twelve years' confinement in the penitentiary. . He again appeals.

Two grounds are relied on for reversal, both relating to the exclusion of evidence offered by the defendant at the trial.

Flora Benge and Laura Benge, two daughters of the deceased, were the chief witnesses for the Commonwealth. They were asked by the defendant on cross-examination if they had not made on the other trial certain

statements different from their testimony on the second trial and they denied making these statements. The defendant introduced the circuit clerk and proved by him that T. H. Bowling acted as official stenographer and took the evidence on the first trial of the case in shorthand and afterwards transcribed his notes. He was then handed a paper and asked this question: "I will ask you to look at this and see if that is a copy of the transcript," and he answered, "Yes, sir, I think so." The paper handed the witnes was not signed or certified in any way. The court refused to allow the defendant to read from the paper the answers of the witnesses above referred to and to this he excepted.

The uncertified and unsigned paper was not competent for any purpose unless proved to be correct by the oath of some witness. Section 4640, Kentucky Statutes, provides that a carbon copy of the transcript shall remain in the office of the clerk of the court as a public record, but to be competent as evidence it must be signed and certified by the officer just as the original transcript is signed and certified. By section 4643 such transcript, when properly certified, may be used in any subsequent trial of the same case where the testimony of the witness cannot be procured. By section 4644 the transcript of the testimony made by the reporter, when attested by the judge before whom the trial was had, may be taken without being copied to the Court of Appeals and thereafter returned to the court in which it was made. But the paper offered to be read was not attested by the judge presiding at the trial and was not certified by the reporter. The court, therefore, did not err in refusing to allow the witness to read from this paper to the jury. It is unnecessary for us, therefore, to determine what proof should be made, if any, to introduce a stenographer's properly certified transcript to contradict the testimony of a witness on a trial and this question is not decided.

On the cross-examination of Flora Benge, she was asked if William Yates did not come to their house on the night of the homicide and there have a conversation with her mother, her sister and herself. She was then asked these questions and made these answers:

"Q. Didn't you and your sister. speaking to Mr. Yates there, say when uncle Steve came along your father went out and made some remark about 'if you are as brave now as you were today as you

went up?' A. No, sir, nothing of that kind was said.

"Q. Was anything like that said to Yates or in his presence? A. No, sir."

On cross-examination of Laura Benge there were these questions and answers made:

"Q. Now, didn't some of you women folks say to him there in speaking about the trouble that your uncle, the defendant, would have gotten by if one of the children hadn't seen him and said 'there goes uncle Steve now?' A. If so I never heard it.

"Q. And didn't you say to him there that when the child said, 'there goes uncle Steve now' that your father jumped up and went immediately out of the house and that your mother tried to get him not to go? A. No, sir, we never told William Yates one thing."

On the examination of Yates this occurred:

"Q. Mr. Yates, I will ask you if in that conversation there in the home of Wood Benge at the time you have spoken of, if one or the other of those two girls, Flora or Laura, when talking with you about that trouble didn't say to you these words or sub-stance, that when Steve Martin came along that some one of the little folks said, 'there goes Steve,' and that her father then stepped out and said to Steve, 'Have you got your nerve like you had it today, or this evening?' and did she say in that same conversation that Steve and Bledsoe had gone up that evening and there was some shooting there about their home? (Commonwealth objects; objection sustained; defendant excepted; no avowal.)

"Q. Well, did one of the girls say to you in words or substance that when Steve came along their father stepped out and said to Steve, 'Have you got your nerve like you had it today?' A. Yes, sir; the girls said— (Commonwealth objects; objection sustained; defendant excepted; no avowal)."

The objection of the Commonwealth was properly sustained to the first question, because neither of the girls had been asked this question. It is earnestly insisted that no avowal was necessary as to what the answer of the witness would be to the other question, for the reason that the jury had been withdrawn and the

witness had been allowed to state to the court what had occurred between him and the girls. The court had then said that it would be competent for the witness to answer the question yes or no, adding, "The objection to the question will be overruled and the answer of the witness will simply be yes or no." The jury then immediately returned to the room. When the witness was asked the question he answered, "Yes, sir." Both the counsel and the witness were bound to understand that the witness could answer the question yes or no. It was only when he began to tell what the girls said that the court stopped him. Both of the girls testified on their direct examination that one of the chrildren, when Steve Martin came along, said: "There goes uncle Steve." So there was no dispute about this. In fact the court was more liberal to the defendant than the rule authorizes. A witness may be contradicted by evidence showing that he has made out of court a statement different from his testimony in court. But he must be first asked if he has made the statement. When Yates was introduced to prove that one of the girls made a certain statement and did not know which one made it, the foundation for the question should have been laid by asking each of the girls if she made this statement. Apparently the purpose of the examination was to get before the jury the witness' statement of what had occurred as he had made it to the court. This was improper. He was properly stopped after he said, yes, sir, and began to tell what the girls said. The court had just ruled that he could answer the question yes or no, and we see no reason for a misunderstanding of the ruling of the court when he stopped the witness. The evidence was admissible only to discredit the witness, not to prove the facts stated.

It was entirely immaterial that when he asked these girls the question who shot first, they did not answer, for they were not required to submit to a cross-examination by him. The questions asked as to what Mrs. Benge said were properly excluded. While a witness may be contradicted by proof that he has stated out of court a material thing, different from his testimony in court, the rule has never been applied to the statement of a third person who was not a witness on the trial. Mrs. Benge was not sworn as a witness in the case and no proof was competent as to anything that she said or failed to say to William Yates several hours after the homicide.

Under the statute a judgment of conviction may not be reversed unless on the whole case it appears that the defendant's substantial rights have been prejudiced. In view of all the evidence in the case the substantial rights of the defendant were not affected, and the defendant had a fair trial of the real merits of his case. The proof, in fact, leaves no reasonable doubt that he and Wood Benge were each ready for the fray. He was drinking heavily; he had been on bad terms with Benge for some time and whether he or (as he said) Benge first dared the other to the combat, if his nerve was as good as before, the fact was that both of them, before anything was said, had their pistols out and neither showed any disposition to keep the peace or to avoid the difficulty. On the whole case the verdict of the jury is well within the evidence.

Judgment affirmed.